UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| BILLIER RAY HOUNCHELL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3: 15-048-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION** |
| SECURITY, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Billie Ray Hounchell, Jr., (hereafter, "Hounchell" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 11] Hounchell contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for disability income benefits ("DIB") and supplemental security income ("SSI"). [Record No. 10-1] He requests that the Court direct a finding of disability or, in the alternative, remand for further administrative proceedings before a new ALJ. [Record No. 10-1, p. 13] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by the Claimant.

-1-

I.

On November 15, 2011, Hounchell filed concurrent applications for a period of disability and DIB under Title II and SSI under Title XVI of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," p. 10] Hounchell alleged that his disability began December 31, 2008. [Tr. p. 10] The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. [Tr. pp. 175, 180, 183] Thereafter, an administrative hearing was held before the ALJ [Tr. pp. 26–82] and the ALJ issued a written opinion. [Tr. pp. 10–21] Hounchell then sought review by the Appeals Council, which was denied. [Tr. p. 1]. Thus, Hounchell has exhausted his administrative remedies and his case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Hounchell was 37 years-old at the time of the ALJ's decision and had an eleventh-grade education. [Tr. pp. 19, 33] He took special education classes in high school and did not obtain his GED. [Tr. p. 38] Hounchell was employed previously as a handyman for the city housing authority and as a cook at fast-food restaurants. [Tr. p. 50] In 2011, he completed a three-year term of imprisonment and has performed odd jobs since his release from custody. [Tr. pp. 38, 50–51] Hounchell contends that he is unable to work due to his intellectual difficulties and right knee pain. [Tr. pp. 32, 54] He concedes that he could go back to his old job at the housing authority were it not for his criminal history. [Tr. p. 54–55]

In June 2011, consultant Dennis Sprague, Ph.D., performed a psychological examination of Hounchell. [Tr. pp. 335–41] Sprague described Hounchell's speech as normal, though his abilities with respect to vocabulary and listening comprehension were below normal. [Tr. p. 336] He had some difficulties following directions, and was friendly, quiet, and somewhat withdrawn. [Tr. p. 336] Hounchell was oriented to person, place, and time,

and his social judgment was average. [Tr. p. 337] Upon testing, Dr. Sprague noted that Hounchell had significant lags in abstract reasoning, as well as tasks requiring computation. [Tr. p. 338] Tasks requiring common sense and social judgment were also significantly impaired. [Tr. p. 338] Dr. Sprague assigned Hounchell a full-scale IQ of 55, consistent with the mild range of mental retardation. [Tr. p. 338] Accordingly, Sprague believed that Hounchell's ability for sustained concentration and attention were moderately impaired. [Tr. p. 340] He also believed that Hounchell's ability to deal with stressors and to work with others without exhibiting behavioral extremes would be limited. [Tr. p. 340]

In August 2011, H. Thomas Prout Ph.D., provided a mental capacity assessment based on his review of the record. [Tr. pp. 92–93] Relying largely on Hounchell's work history, Prout found that the weight of the evidence was inconsistent with a full-scale IQ in the 50s. [Tr. p. 93] Prout believed that Hounchell was able to understand, remember, and carry out simple one and two-step instructions requiring little to no independent judgment. [Tr. p. 91] Further, Prout opined that Hounchell could perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. [Tr. p. 91] He also felt that Hounchell could make simple work-related decisions. [Tr. p. 91]

Jay Athy, Ph.D., also reviewed Hounchell's file on February 8, 2012. [Tr. 120–22] Dr. Athy agreed with Dr. Sprague's assessment, except that he believed that Hounchell retained the ability to understand and remember simple tasks; sustain concentration and memory to complete simple tasks; relate to co-workers in a non-public setting; and adapt to simple changes in a routine work environment. [Tr. p. 122] Dan Vandivier, Ph.D., reviewed Hounchell's file on April 12, 2012, and reached the same conclusions as Dr. Athy. [Tr. p. 151]

Robert Nold, M.D., examined Hounchell's right knee on July 28, 2011. [Tr. p. 128] Nold noted that Hounchell had undergone right knee surgery in the past and that his knee was unstable. Additionally, the range of motion in his right knee was slightly limited. [Tr. p. 128] His gait and strength were normal, however, with no evidence of a limp. Nold opined that Hounchell would have some difficulty with activities involving squatting and kneeling. [Tr. p. 128] X-rays taken at the Frankfort Regional Medical Center in August 2011 apparently showed no abnormality other than the hardware in place from Hounchell's previous ALC surgery. [Tr. p. 128]

Amanda Lange, M.D., performed a functional capacity assessment on April 12, 2012. [Tr. p. 161–63] Dr. Lange determined that Hounchell could lift and carry 50 pounds occasionally and 25 pounds frequently. [Tr. p. 161] She opined that he could sit, stand, and walk up to six hours in an eight-hour work day. [Tr. p. 161] She felt that he could frequently kneel and crawl. [Tr. p. 162]

The ALJ determined that Hounchell had the severe impairments of right knee dysfunction; obesity; and borderline intellectual functioning. [Tr. p. 12] He determined that Hounchell did not have an impairment or combination of impairments that met or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, however. [Tr. p. 12] After considering the record, the ALJ determined that Hounchell had the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Tr. p. 15] Because there were jobs existing in significant numbers in the national economy that Hounchell could perform, the ALJ determined that he had not been under a disability from the alleged onset date through the date of the ALJ's decision. [Tr. pp. 20–21]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

**A.    Substantial Evidence Supports the Commissioner's Decision That Hounchell Does Not Meet Listing 12.05B**

Listing 12.05B provides in pertinent part as follows:

Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

  B. A valid verbal, performance, or full scale IQ of 59 or less.

 While Dr. Sprague opined that Hounchell possessed a full scale IQ of 59, the ALJ found that score to be invalid and rejected it. [Tr. p. 14] It appears that the Sixth Circuit has not addressed an ALJ's ability to reject an IQ score when it is the sole score in the record. Several other circuits permit an ALJ to do so, however, when the score is inconsistent with substantial evidence in the record. *See e.g.*, *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases). Dr. Thomas Prout opined that Hounchell's daily activities were not consistent with those of an individual with an IQ in the 50s. [Tr. p. 93] Specifically, Prout stated that an IQ of 55 was inconsistent with Hounchell's work history. *Id.* From around 2002 to 2008, Hounchell worked for the housing authority in Frankfort, Kentucky, performing maintenance such as painting, mowing grass, and reading utility meters. [Tr. pp. 33–34, 46–51]. He had also worked as a cook in busy fast-food restaurants. [Tr. p. 45–46] Hounchell advised the ALJ that he was capable of performing his previous work at the housing authority—he simply was no longer qualified for the job due to his criminal background. [Tr. p. 54]

 Evidence regarding Hounchell's adaptive functioning also provides substantial evidence for the ALJ's rejection of the excessively low IQ score. *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 561–62 (6th Cir. 2014). Adaptive functioning is defined as a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 328 (1993). Hounchell lives with his girlfriend and assists with household chores, although he denied having the ability to do this in his pain and daily activities questionnaire.

[Tr. pp. 54, 63, 288]  He is able to use public transportation and he visits with friends up to twice per day.  [Tr. p. 64]  Although he took the test orally, Hounchell was able to get his driver's license.  [Tr. p. 37]  He talks to his mother on the telephone every day.  [Tr. p. 64]

With respect to Hounchell's developmental period, the only evidence he has provided is a record indicating he took special education classes in high school.  [Tr. p. 245]  Hounchell contends that he received SSI as a minor, which he believes was based on an intellectual disability.  [Record No. 10-1, p. 3]  Apparently the benefits were discontinued only a few years ago, yet Hounchell has provided no evidence regarding the prior claim.  *See Landshaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("Generally, [t]he burden of providing a complete record . . . rests with the claimant."); *see also Gosnell v. Sec'y of Health & Human Servs.*, 703 F.2d 216, 218–19 (claimant was responsible for maintaining a copy of prior claim).  And while the ALJ asked Hounchell a group of leading questions concerning a blueprinting class taken during high school, Hounchell did express a rudimentary understanding of basic construction concepts.  [Tr. pp. 18, 40–44, 69]

Although his earnings were modest, the record shows that Hounchell earned wages from the age of eighteen through twenty-two.  [Tr. p. 225]  The Sixth Circuit has made clear that poor academic performance alone is insufficient to warrant a finding of subaverage intellectual functioning before age twenty-two.  *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009).  Hounchell has failed to provide any evidence, other than his enrollment in special education classes, suggesting that his adaptive skills were limited during the developmental period.  *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).  Accordingly, substantial evidence supports the Commissioner's determination that Hounchell did not meet Listing 12.05B.

### B.  Substantial Evidence Supports the Commissioner's Decision That Hounchell Does Not Meet Listing 12.05C

Listing 12.05C allows a claimant to demonstrate an intellectual disability by showing: a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. § 404, Subpart P, App. 1. Hounchell argues that even if Dr. Sprague underestimated his full scale IQ by as many as 14 points, he meets 12.05C based on his IQ and his right knee impairment. However, substantial evidence supports the Commissioner's determination that Hounchell's knee impairment did not impose a significant work-related limitation of function. Accordingly, he does not meet the Listing under 12.05C.

A "significant work-related limitation of function" is equivalent to a severe impairment as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). 20 C.F.R. § 404, Subpart P, App. 1, 12A. Dr. Nold examined Hounchell's right knee in July 2011 and, while the knee was unstable, gait and strength were normal. [Tr. p. 128] Hounchell had some difficulty with squatting and kneeling, but he walked without a limp. [Tr. p. 128] Dr. Lange opined that he could stand and walk up to six hours in an eight-hour work day and could frequently kneel and crawl. Hounchell testified during his hearing that he and his girlfriend walk two miles every day. [Tr. p. 65] There were no medical sources in the record that indicated Hounchell's knee significantly limited his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). Further, the ALJ relied on the opinions of Drs. Nold and Lange in fashioning Hounchell's residual functional capacity.

Hounchell contends that, a few days after the ALJ's decision, an MRI revealed that he suffered from meniscus tears in his right knee and a deep vein thrombosis. [Record No. 10-1,

p. 12] He submitted medical documentation to the Appeals Council showing that he underwent meniscus surgery on February 2, 2014. [A.R. p. 398] The Appeals Council considered the new evidence, but declined to review Hounchell's claim. The Court cannot consider this evidence as part of the record for purposes of substantial evidence review. *Foster*, 279 F.3d at 357. The Court may remand for further consideration of the evidence only if the party seeking remand has shown that the new evidence is material. *Id.* Hounchell has failed to make such a showing in this case, as he has not explained how this evidence would change the ALJ's prior analysis. [Record No. 10-1, p.12]

### C. The ALJ Did Not Err in Failing to Request Hounchell's Prison Records

Hounchell contends that the ALJ should have requested his medical and mental health records from his period of incarceration. [Record No. 10-1, p. 13] He alleges that the prison most likely conducted IQ testing that would have been relevant to the ALJ's determination. *Id.*

While ALJs have the ability to issue subpoenas on their own motion, the ALJ did not have a special duty to develop the record with respect to this information. *See* 20 C.F.R. §§ 404.950 and 416.1450; *see also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x, 456, 459 (6th Cir. 2008). Hounchell was represented by counsel throughout these proceedings and there is no indication that he attempted to obtain these records or that he alerted the ALJ to his concern that they existed and might be relevant. Accordingly, for the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

2. Plaintiff Billie Ray Hounchell's Motion for Summary Judgment [Record No. 10] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 16th day of June, 2016.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge